UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 DR. DAVID JANKOWSKI,

Defendant.
_____/

Case: 2:17-cr-20401
Judge: Friedman, Bernard A.
MJ: Grand, David R.
Filed: 06-07-2017 At 07:24 AM
SEALED MATTER (DP)

VIOLATIONS:
21 U.S.C. §§ 841(a)(1) and 846
18 U.S.C. § 1347

## INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

Beginning on or about January 2011, a scheme and pattern of illegal conduct involving the unlawful distribution of prescription drug controlled substances and fraudulent health care billings was formed. The defendant, Dr. DAVID JANKOWSKI, and others, both known and unknown to the grand jury, played different roles and engaged in different aspects of the overall scheme.

The defendant, Dr. DAVID JANKOWSKI, organized and operated purported medical practices and clinics, including Summit Medical Group, Summit Physicians

1

Group, and Summit Visiting Physicians. A fundamental purpose of these entities was to write prescriptions for controlled substances that could be filled and dispensed from Dr. DAVID JANKOWSKI's in-house dispensary or various pharmacies. The purpose of filling the controlled substance prescriptions was not for the legitimate treatment of patients, but rather to obtain controlled substances that could be sold at a substantial profit on the illegal street market.

The primary prescription drug controlled substances illegally prescribed and distributed were Roxicodone (oxycodone HCl), hydrocodone, alprazolam (Xanax), and carisoprodol (Soma).

At various times Dr. DAVID JANKOWSKI employed different doctors, including L.L., J.W., S.M., and J.B., physician's assistants including H.R., and nurse practitioners, including E.S. Each of these individuals knowingly prescribed prescription drug controlled substances outside the course of legitimate medical practice and for no legitimate medical purpose, in furtherance of the scheme.

The doctors and physician assistants employed in these businesses generated income by writing controlled substances or issuing a controlled substance prescription which had been pre-signed by Dr. DAVID JANKOWSKI. The prescriptions were issued after either a cursory examination by the prescribing practitioner or without any examination at all.

During the timeframe of the conspiracy, the defendant wrote more than 45,000 prescriptions for controlled substances. In particular, the defendant prescribed more than 1.3 million unit dosages of Schedule II controlled substances and more than 400,000 unit dosages of schedule III controlled substances. The defendant knowingly prescribed prescription drug controlled substances outside the course of legitimate medical practice and for no legitimate medical purpose, in furtherance of the scheme.

As part of the conspiracy, patient "recruiters" would recruit Medicare and Auto Insurance beneficiaries to be seen by the defendant. After a cursory examination or no examination at all, the defendant would write prescriptions for controlled substances in the name of the purported patient. The controlled substance prescriptions would be provided to the purported patient, who, after filling the prescription, would give a portion of the prescription, or cash, to the recruiter as compensation for taking the purported patient to the doctor.

At other times during the scheme, patient names would simply be provided to the defendant, Dr. DAVID JANKOWSKI, and in exchange for cash payments, he would write the controlled substance prescriptions without examining any purported patients at all.

Patients with Medicare cards and Auto Insurance claims were sought to participate in this scheme. The "doctor visit" and various unnecessary medical tests

or procedures, which may or may not have been performed, would be billed to Medicare or Auto Insurance Companies. Billing for a more expensive procedure than the one actually conducted, referred to as "upcoding," also took place. The top procedure codes billed by defendant Dr. DAVID JANKOWSKI to Medicare included office visits and injections.

In addition, both the controlled substances and non-controlled "maintenance" medications would be billed to health care benefit programs by the pharmacies or the defendant's in-house dispensary. This "maintenance medication" was used in order to make the doctor's prescribing practices appear more legitimate by reducing the percentage of controlled substance prescriptions.

Billings to the Medicare program for medically unnecessary patient services during the time frame of this conspiracy exceeded $17 million. Additionally, billings to the Medicare program for prescription medications filled during the timeframe of this conspiracy exceeded $5 million.

During the conspiracy, it was the role of A.B., A.M., and other unindicted coconspirators, to serve as patient recruiters or marketers who recruited Medicare beneficiaries to become nominee or "fake" patients in order to obtain controlled substances for illegal street trafficking.

These general allegations are adopted and incorporated in each count of this indictment.

## COUNT ONE

(21 U.S.C. §§ 841(a)(1), 846- Conspiracy to Distribute and
Possess with Intent to Distribute Controlled Substances)

D-1 Dr. DAVID JANKOWSKI

That beginning on or about January, 2011, and continuing until on or about the date of this indictment, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, Dr. DAVID JANKOWSKI, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with other persons not named in this Indictment, to commit offenses against the United States, that is, to knowingly, intentionally and unlawfully distribute and possess with intent to distribute controlled substances, including but not limited to, the Schedule II drugs Roxicodone (Oxycodone HCl) and Hydrocodone, the Schedule III drugs Hydrocodone bitartrate/acetaminophen; the Schedule IV drug Alprazolam (Xanax); and the Schedule IV drug Carisoprodol (Soma). These prescription drug controlled substances were distributed outside the course of usual medical practice and for no legitimate medical purpose, all in violation of Title 21, United States Code, Sections 846, 841(a)(1).

## COUNTS TWO – SEVEN

(21 U.S.C. §§ 841(a)(1)- Unlawful Distribution of Controlled Substances )

D-1 Dr. DAVID JANKOWSKI

On or about each of the dates set forth below, defendant, Dr. DAVID JANKOWSKI did knowingly, intentionally, and unlawfully distribute the following prescription drug controlled substances. Dr. DAVID JANKOWSKI committed these offenses by writing or pre-signing prescriptions for controlled substances for no legitimate medical purpose, and transferring the prescriptions so they could be filled, in the names of individuals as follows:

| Count | On or About Date | Patient | Controlled Substance | Quantity | Controlled Substance Schedule |
|---|---|---|---|---|---|
| 2 | 12/18/2014 | H.B. | Hydrocodone (Norco 7.5 mg.) | 60 | II |
| 3 | 2/16/2015 | H.B. | Hydrocodone (Norco 10 mg.) | 90 | II |
| 4 | 10/26/2015 | H.B. | Hydrocodone (Norco 10 mg.) | 90 | II |
| 5 | 10/26/2015 | H.B. | Morphine (30 mg) | 30 | II |
| 6 | 1/19/2016 | H.B. | Hydrocodone (Norco 10 mg.) | 90 | II |
| 7 | 1/19/2016 | H.B. | Morphine (30 mg.) | 30 | II |

All in violation of Title 21, United States Code, Section 841(a)(1).

**The Health Insurance Program**

The Medicare Program (Medicare) is the federal healthcare program for the aged and disabled established by Congress in 1965, as Title XVIII of the Social Security Act and codified at 42 U.S.C. § 1395. Medicare is administered through the Centers for Medicare and Medicaid Services (CMS). CMS is a division of the United States Department of Health and Human Services. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries." Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

Medicare includes coverage under four primary components, hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C) and prescription drug benefits (Part D).

Medicare Part A also covers physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements. Part B of the Medicare Program covers the cost of physicians, services and other ancillary services not covered by Part A.

Medicare Part D provides prescription drug coverage to persons who are eligible for Medicare. Under the program, eligible Medicare beneficiaries may enroll in a Medicare Prescription Drug Plan that adds prescription drug coverage to traditional Medicare. Alternatively, Medicare eligible beneficiaries may obtain

7

prescription drug coverage by enrolling in a Medicare Advantage Plan under Part C of the Medicare program. Such Medicare Advantage Plans provide the full range of Medicare coverage to enrollees, including a prescription drug benefit under Medicare Part D.

AdvanceMed, an NCI company, was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan after June 1, 2015. Cahaba Safeguard Administrators, LLC (Cahaba) was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan from April 24, 2012 to May 31, 2015. Prior to April 24, 2012, the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan was Trust Solutions, LLC (Trust Solutions).

Health Integrity, LLC (Health Integrity) was the National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC) for Medicare Part D in the state of Michigan as of the date of this Second Superseding Indictment.

By becoming a participating provider in Medicare Part B, enrolled providers agree to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under

the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

Upon certification, the medical provider, whether a clinic or an individual, is assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider renders a service, the provider submits a claim for reimbursement to the Medicare contractor/carrier that includes the PIN assigned to that medical provider. When an individual medical provider is associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers can only submit claims to Medicare for services they rendered and providers must maintain patient records to verify that the services were provided as described on the claim. The basic requirement for any claim to be payable by Medicare is that the service must be "reasonable and necessary for the diagnosis or treatment of illness or injury." What is "reasonable and necessary" for certain conditions is defined based upon accepted practices in the medical community, as further defined by National Coverage Determinations

issued by CMS and Local Coverage Determinations issued by the Medicare administrative contractor for the State of Michigan.

On December 7, 2016 (the most recent application on file), Dr. DAVID JANKOWSKI filed an 855I form with CMS revalidating his provider enrollment in Medicare with Summit Medical Group. On the 855I, Dr. DAVID JANKOWSKI signed the certification statement indicating that he agreed, among other things, to abide by the Medicare laws, regulations, and program instructions, and that he understood that payment of Medicare claims is conditioned upon the claim and underlying transaction complying with such laws, regulations, and program instructions. By signing the certification statement, Dr. DAVID JANKOWSKI also agreed that he would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

These health insurance program allegations are adopted and incorporated into Counts Eight through Thirteen of this indictment.

## **COUNTS EIGHT – THIRTEEN**

(18 U.S.C. §§ 1347- Health Care Fraud)

D-1 Dr. DAVID JANKOWSKI

On or about the dates specified as to each count below, in the Eastern District of Michigan, Southern Division, the defendant, Dr. DAVID JANKOWSKI, in

10

connection with the delivery of a payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

It was the purpose of the scheme for the defendant to unlawfully enrich himself by, among other things, (a) submitting false and fraudulent claims to Medicare, for prescription medication, physician office visits, and other services; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant.

| Count | On or About Date | Patient | CPT Code | Description of Procedure | Amount Billed |
|---|---|---|---|---|---|
| 8 | 12/18/2014 | H.B. | 99213 | Established Patient Office Visit | $370.00 |
| 9 | 2/16/2015 | H.B. | 99213 | Established Patient Office Visit | $370.00 |
| 10 | 2/16/2015 | H.B. | J1885 | Injection Beneath the Skin | $90.00 |

11

| Count | On or About Date | Patient | CPT Code | Description of Procedure | Amount Billed |
|---|---|---|---|---|---|
| 11 | 2/16/2015 | H.B. | 96372 | Injection, Ketorolac, Tromethamine, per 15 mg. | $80.00 |
| 12 | 2/16/2015 | H.B. | 98926 | Osteopathic Manipulation | $160.00 |
| 13 | 1/19/2016 | H.B. | 99213 | Established Patient Office Visit | $370.00 |
|  |  |  |  |  |  |

All in violation of Title 18, United States Code, Section 1347.

## FORFEITURE ALLEGATIONS

### (21 U.S.C. §853, 18 U.S.C. § 981(a)(1)(C), 982(a), 28 U.S.C. §2461 - Criminal Forfeiture)

The allegations contained in this Indictment above are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Tile 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(7).

Upon conviction of the conduct alleged in Counts One through Thirteen of the Indictment, the defendant shall forfeit to the United States any property, constituting or derived from, any proceeds obtained, directly or indirectly as a result of such violations pursuant to Title 21, United States Code, Section 853.

Upon conviction of the conduct alleged in Counts One through Seven, the defendant shall forfeit any property used or intended to be used, in any manner, to facilitate the commission of such violations pursuant to Title 21, United States Code, Section 853.

Upon conviction of the conduct alleged in Counts Eight through Thirteen, the defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, any gross proceeds obtained, directly or indirectly, as a result of such violations pursuant to Title 18, United States Code, Section 982(a)(7).

Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

　　i. Cannot be located upon the exercise of due diligence;

　　ii. Has been transferred or sold to, or deposited with, a third party;

　　iii. Has been placed beyond the jurisdiction of the Court;

　　iv. Has been substantially diminished in value; or

　　v. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek to forfeit any other property of defendant up to the value of the above-described property subject to forfeiture.

THIS IS A TRUE BILL

s/GRAND JURY FOREPERSON

DANIEL LEMISCH
Acting United States Attorney

s/WAYNE F. PRATT
Chief, Health Care Fraud Unit

| Assistant United States attorney<br>s/REGINA R. McCULLOUGH<br>Assistant United States Attorney<br>211 W. Fort St., Ste. 2001<br>Detroit, MI 48226<br>Phone: (313) 226-9618<br>Email: regina.mccullough@usdoj.gov<br><br>Dated:   June 7, 2017 | s/PHILIP A. ROSS<br>Assistant United States Attorney<br>211 W. Fort St., Ste. 2001<br>Detroit, MI 48226<br>Phone: (313) 226-9790<br>Email: philip.ross@usdoj.gov |
|---|---|



| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: N/A |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: N/A |
| ☐ Yes   ☒ No | AUSA's Initials: RRM |

Case Title: USA v. DR. DAVID JANKOWSKI

County where offense occurred : Wayne

Check One:   ☒ Felony   ☐ Misdemeanor   ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

Superseding to Case No: _____   Judge: _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

June 7, 2017
Date

Regina McCullough
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9618
Fax:    (313) 226-2621
E-Mail address: regina.mccullough@usdoj.gov
Attorney Bar #: N/A

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.