UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

                Plaintiff,

                                        **HONORABLE BERNARD A. FRIEDMAN**

        v.                              **No. 17-20401-1**

**DAVID JANKOWSKI,**

                Defendant.
_____/


**JURY TRIAL - VOLUME 16**

**Monday, July 11, 2022**


Appearances:

Regina R. McCullough
Wayne F. Pratt
Philip A. Ross                  Anjali Prasad
U.S. Attorney's Office          Prasad Legal
211 W. Fort Street, #2300       1668 S. Telegraph Road, #200
Detroit, Michigan  48226        Bloomfield Twp., MI  48302
(313) 226-9100                  (215) 681-6674
regina.mccullough@usdoj.gov     aprasad@prasadlegal.com
wayne.pratt@usdoj.gov              On behalf of Defendant
philip.ross@usdoj.gov
  On behalf of Plaintiff


                        -   -   -


*To obtain a certified transcript, contact:*
*Sheri K. Ward, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard*
*Detroit, Michigan  48226*
*(313)234-2604 · ward@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Jury Trial – Volume 16*
*Monday, July 11, 2022*

**I N D E X**

Proceedings                                              <u>Page</u>   <u>Vol.</u>

Jury Question ....................................3      16

Jury Note .......................................5      16

Jury Verdict ....................................7      16

Jury Polled .....................................9      16

Jury Dismissed ................................10      16

Motion for Bond Revocation ......................11     16

Argument by Mr. Pratt ..........................13      16

Argument by Ms. Prasad .........................21      16

Ruling of the Court ............................22      16

Certification of Reporter ......................26

-   -   -

**E X H I B I T S**

Number     Description                  <u>Id'd</u> <u>Rcvd</u> <u>Vol</u>.

***None Marked, Offered or Received***

*17-20401-1; U.S.A. v. David Jankowski*

| | |
|---|---|
| **1** | Detroit, Michigan |
| **2** | Friday, July 8, 2022 |
| **3** | -   -   - |
| **4** | (Jury deliberations commenced.) |
| **5** | (A note was received from the jury, and the following |
| **6** | discussion took place at 10:49 a.m.) |
| **7** | **THE COURT:**  Okay.  Starting with the Government, what |
| **8** | do you perceive is the question -- or the answer? |
| **9** | **MR. PRATT:**  Your Honor, we would like the Court to |
| **10** | directly tell them that if he's not guilty on Count 16 he could |
| **11** | be guilty on Count 1 and then direct their attention to the |
| **12** | specific jury instruction which covers it.  I don't have mine |
| **13** | here so I don't have the number, but I put them together and I |
| **14** | know there's one that says your verdict on one count doesn't |
| **15** | control your verdict on all counts. |
| **16** | **THE COURT:**  And what's the Defense? |
| **17** | **MS. PRASAD:**  I do remember there is a specific jury |
| **18** | instruction on this, Judge, so I would just ask that, whoever |
| **19** | is reading the jury instruction, that they be read that jury |
| **20** | instruction.  It's something like if you are not guilty on |
| **21** | one count you still may be guilty on other counts. |
| **22** | **THE COURT:**  Well, isn't the answer yes?  Just yes? |
| **23** | **MR. PRATT:**  I think I would like you to answer the |
| **24** | question and say yes, but I'd also like you to direct them to |
| **25** | that specific page because I think that gives the correct legal |

*Jury Question*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 4*

1  explanation as to why so that they are not confused by --

2  　　　　　**THE COURT:**  I think we all agree that it's yes.  The

3  reason that I -- and I don't have any problems usually pointing

4  them to a specific jury instruction, but this question can be

5  answered in one word, yes or no.

6  　　　　　**MS. PRASAD:**  That's totally fine with me, Judge.

7  　　　　　**THE COURT:**  Okay.  Government?  Then if they have

8  another question, then we can start referring, but they are

9  asking a specific question yes or no.

10  　　　　　**MR. PRATT:**  All right.  That's fine, Your Honor.  If

11  the Defense is happy not pointing them to the particular

12  instruction, if that's what they want, why then we'll withdraw

13  our request and we'll just --

14  　　　　　**THE COURT:**  Okay, sure.  I'm going to put yes.

15  However, with the understanding -- I'm just going to put yes,

16  but if they ask us another question and it appears that they

17  are still confused, we'll refer them to the jury instructions,

18  but I think we should answer the specific question.  And we

19  know the answer.  It's yes.  And what time is it right now?  It

20  is 10:50.

21  　　　Okay.  We'll take that in.

22  　　　And may we give them more copies of the indictment?  Does

23  anybody have any objection?  The superseding indictment, the

24  same one they have.

25  　　　　　**MR. PRATT:**  No objection to more copies, Your Honor.

*17-20401-1; U.S.A. v. David Jankowski*

*Jury Note*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 5*

| | |
|---|---|
| 1 | **THE COURT:**  Okay.  I don't know how many they want, |
| 2 | but we'll give them some.  Oh, I'm going to put right on here |
| 3 | we'll be delivering copies of the superseding indictment. |
| 4 | **THE CLERK:**  They wanted 12. |
| 5 | **THE COURT:**  They want 12?  Then we know how many, |
| 6 | okay.  If they want 12, we'll do 12. |
| 7 | Okay.  Stick around, and we'll see if they have anything |
| 8 | else. |
| 9 | **MS. McCULLOUGH:**  Thank you, Your Honor. |
| 10 | (Recess from 10:52 a.m. to 12:22 p.m.) |
| 11 | (A note was received from the jury, and the following |
| 12 | discussion took place at 12:22 p.m.) |
| 13 | **THE COURT:**  I'm writing them back.  It will be about |
| 14 | 45 minutes to gather all the parties.  You may remain or go to |
| 15 | lunch.  If you go to lunch or remain, then no one is to talk |
| 16 | about -- here we go -- talk about the case still applies unless |
| 17 | you are all in the same room.  We will reconvene at 1:20. |
| 18 | Any objection by the Government? |
| 19 | **MR. PRATT:**  No, Your Honor. |
| 20 | **THE COURT:**  Any objection by the Defense? |
| 21 | **MS. PRASAD:**  No, Judge.  And, again, I do apologize |
| 22 | for the hiccup. |
| 23 | **THE COURT:**  Don't worry about it. |
| 24 | **MS. PRASAD:**  I do apologize. |
| 25 | **THE COURT:**  We're all surprised. |

*17-20401-1; U.S.A. v. David Jankowski*

*Jury Note*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 6*

1      **MS. PRASAD:**  Thank you.

2          **THE COURT:**  More than surprised.

3      If you could take this in, Rachel, and we'll reconvene at

4      1:20.

5          **MS. McCULLOUGH:**  Thank you, Your Honor.

6          **THE COURT:**  Don't worry about it.  We're as surprised

7      as you.

8          (Recess from 12:23 p.m. to 1:29 p.m.)

9          **THE COURT:**  Okay.  You may be seated.  Thank you.

10     I think everybody knows we have a verdict, and we will ask

11     Rachel and Dan to bring the jurors in, please.

12     You may be seated.

13         **THE CLERK:**  Please rise for the jury.

14     (Jury in at 1:31 p.m.)

15         **THE COURT:**  Okay.  You may be seated.  Let the record

16     reflect that all of the jurors are present and accounted for.

17     Ladies and gentlemen of the jury, have you selected a

18     foreperson, and, if so, if the foreperson can please stand and

19     give us your name.

20         **THE FOREPERSON:**  Kiara Clark.

21         **THE COURT:**  Okay.  And has the jury in this matter

22     reached a unanimous verdict?

23         **THE FOREPERSON:**  We have.

24         **THE COURT:**  And have you placed that unanimous

25     verdict on the form in the proper order and signed it?

*17-20401-1; U.S.A. v. David Jankowski*

*Jury Verdict*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 7*

1          **THE FOREPERSON:**  We have.

2          **THE COURT:**  If you would be kind enough to hand

3     Rachel the jury form, and then you can be seated.

4          Thank you.

5          Okay.  Rachel, if you will be kind enough to read into the

6     record the jury form, I would appreciate it, and I'm going to

7     ask all of the jurors to listen carefully because after it's

8     read I'm going to ask each of you if in fact that is your

9     verdict.  It's called polling the jury.  So listen carefully,

10    and --

11         Rachel.

12         **THE CLERK:**  "Count 1, Conspiracy to Distribute and

13    Possess with Intent to Distribute Controlled Substances:

14    Guilty.

15         "With respect to Count 1 --

16         **THE COURT:**  Yeah, you can read that.

17         **THE CLERK:**  "With respect to Count 1, which Schedules

18    of controlled substances were involved in the offense within

19    the scope of the defendant's criminal agreement?  Check a

20    Schedule if one or more of the listed drugs were involved.

21    Indicate all Schedules involved by checking the appropriate

22    line or lines below:"

23         The boxes are checked for Schedule II, Schedule III and

24    Schedule IV.

25         "Count 2, Health Care Fraud Conspiracy:  Guilty.

*17-20401-1; U.S.A. v. David Jankowski*

"Count 15, Unlawful Distribution of the Controlled Substance Hydrocodone:  Guilty.

"Count 16, Unlawful Distribution of the Controlled Substance Hydrocodone:  Guilty.

"Count 17, Unlawful Distribution of the Controlled Substance Oxycodone:  Guilty.

"Count 18, Unlawful Distribution of the Controlled Substance Oxymorphone:  Guilty.

"Count 19, Unlawful Distribution of the Controlled Substance Alprazolam:  Guilty.

"Count 20, Unlawful Distribution of the Controlled Substance Oxycodone:  Guilty.

"Count 21, Unlawful Distribution of the Controlled Substance Oxymorphone:  Guilty.

"Count 23, Unlawful Distribution of the Controlled Substance Hydrocodone:  Guilty.

"Count 24, Unlawful Distribution of the Controlled Substance Morphine:  Guilty.

"Count 25, Unlawful Distribution of the Controlled Substance Oxycodone:  Guilty.

"Count 26, Unlawful Distribution of the Controlled Substance Oxymorphone:  Guilty.

"Count 28, Unlawful Distribution of the Controlled Substance Hydrocodone:  Guilty.

"Count 29, Unlawful Distribution of the Controlled

*Jury Polled*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 9*

1    Substance Morphine:  Guilty.

2    "Count 30, Unlawful Distribution of the Controlled

3    Substance Oxycodone HCL:  Guilty.

4    "Count 31, Unlawful Distribution of the Controlled

5    Substance Oxymorphone:  Guilty.

6    "Count 32, Unlawful Distribution of the Controlled

7    Substance Alprazolam:  Guilty.

8    "Count 33, Health Care Fraud:  Guilty.

9    "Count 34, Health Care Fraud:  Guilty.

10    "Count 35, Health Care Fraud:  Guilty.

11    "Count 36, Health Care Fraud:  Guilty.

12    "Count 37, Health Care Fraud:  Guilty.

13    "Count 38, Health Care Fraud:  Not Guilty.

14    "Count 39, Health Care Fraud:  Guilty.

15    "Count 40, Health Care Fraud:  Guilty.

16    "Count 41, Health Care Fraud:  Guilty.

17    "Count 42, Health Care Fraud:  Guilty.

18    "Count 43, Health Care Fraud:  Guilty.

19    "Count 44, Health Care Fraud:  Guilty.

20    "Count 45, Health Care Fraud:  Guilty.

21    "Count 46, Health Care Fraud:  Not Guilty."

22         **THE COURT:**  And it's signed --

23         **THE CLERK:**  It is signed.

24         **THE COURT:**  -- by the foreperson.  Thank you.

25    Juror Number 1, is that your verdict?

*17-20401-1; U.S.A. v. David Jankowski*

*Jury Dismissed*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 10*

1      **JUROR:**  Yes.

2      **THE COURT:**  Juror Number 2, is that your verdict?

3      **JUROR:**  Yes.

4      **THE COURT:**  Number 3?

5      **JUROR:**  Yes.

6      **THE COURT:**  Number 4?

7      **JUROR:**  Yes.

8      **THE COURT:**  Number 5?

9      **JUROR:**  Yes.

10      **THE COURT:**  Number 6?

11      **JUROR:**  Yes.

12      **THE COURT:**  Number 7?

13      **JUROR:**  Yes.

14      **THE COURT:**  Number 8?

15      **JUROR:**  Yes.

16      **THE COURT:**  Number 9?

17      **JUROR:**  Yes.

18      **THE COURT:**  10?

19      **JUROR:**  Yes.

20      **THE COURT:**  11?

21      **JUROR:**  Yes.

22      **THE COURT:**  And 12?

23      **JUROR:**  Yes.

24      **THE COURT:**  Okay.  I want to thank you so much for

25  your service, and, as I told you at the beginning of trial -- I

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 11*

1   know you have been here a long time.  Anyone who wishes to be

2   excused certainly can.  I will, however, those that wish to --

3   I told you I would talk to you about what we talked about at

4   side bar and things like that, but I will be back in about

5   five -- no more than five minutes and talk to those that wish

6   to talk or ask questions or any of that kind of thing.

7        So you may be excused.  You may talk about the case now.

8   We appreciate your services.  I will be back to talk to those

9   who wish to learn more about the back story or learn what we

10  talked about in about five minutes.

11       Please rise for the jury.

12       (Jury out at 1:37 p.m.)

13       **THE COURT:**  Do the attorneys want a copy of the

14  verdict form?  No?  Okay.  Never mind.

15       Okay.  You may be seated.

16       Okay.  The Defendant, having been found guilty on those

17  counts that have been read into the record, is there any other

18  matters that we should be discussing?

19       **MR. PRATT:**  Yes, Your Honor.  The Government has a

20  motion regarding bond at this time.  The Defendant was

21  convicted of a number of counts, which the Government -- which

22  under the statute require his detention pending sentencing.

23       I have an argument prepared on that.  I don't want to

24  interfere with the Court going with the jury, but I don't know

25  whether you want me to start into it.  It might take me

*17-20401-1; U.S.A. v. David Jankowski*

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 12*

1  five minutes, but I think it's an important motion, and I would

2  like to be heard on it.

3      **THE COURT:**  Of course.  You have a right to be heard

4  on the motion.  Other than that question, is there anything the

5  Defense has?

6      **MS. PRASAD:**  Other than that motion, Your Honor, no.

7      **THE COURT:**  Okay.  I'm going to talk to the jurors

8  just because I promised them at the beginning, and I think I --

9  so let me just talk to them because they probably want to get

10  out of here, and I'll be back in just a couple of minutes.

11      If it looks like it's going to take longer or should they

12  desire to talk to the attorneys -- oftentimes jurors would like

13  to talk to the attorneys, and I encourage them to do so on both

14  sides because I think it's a good way for all of the attorneys

15  to learn a little bit about style and things of that nature.

16      So if they do wish to talk to the attorneys, I'm going to

17  tell them I'm first going to hear a motion, it will take 10 or

18  15 minutes, and then have the attorneys back.  We'll definitely

19  encourage them to talk to both attorneys if we can.

20      So I'm just going to talk to them quickly, and then if it

21  looks like it's going to take longer I'll come back, hear your

22  motion, and we'll go from there.

23      **MS. McCULLOUGH:**  Thank you, Your Honor.  The

24  Government would like to talk to the jury.

25      **THE COURT:**  Yeah, I'm going to try to encourage them.

*17-20401-1; U.S.A. v. David Jankowski*

1  I think it's good for both sides to talk to the jurors.

2          **MS. McCULLOUGH:**  Thank you, Your Honor.

3          **THE COURT:**  Okay.  I'll be back.

4      (Recess from 1:40 p.m. to 1:53 p.m.)

5          **THE CLERK:**  All rise.

6          **THE COURT:**  Okay.  You may be seated.

7      They were not opposed to talking to the attorneys, but

8  they wanted to get out of here in the worst way so none of them

9  wanted to stick around.  I did tell them that the attorneys on

10  both sides may contact them, and if they wanted to talk to

11  them -- number one, if they contact you, it's fine, nobody is

12  doing anything wrong, but number two, it's still up to them

13  whether they want to discuss the case.

14      So they know if you contact them you are not doing

15  anything wrong, and they did appreciate both sides, I'll tell

16  you right now, but they just wanted to go home.  Every one of

17  them.  Nobody raised their hand when I said does anyone want to

18  stick around, and even that one fellow with the cap that wanted

19  the tour of the building, he was ready to go home.

20      Okay.

21          **MS. McCULLOUGH:**  Thank you, Your Honor.

22          **MR. PRATT:**  Your Honor, in a pretrial setting the

23  defendant is presumed innocent, and the Court always has to, in

24  considering bond, determine whether there's a risk of flight

25  and danger to the community, but there's a specific statute

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 14*

1  that provides a different rule once you are in Dr. Jankowski's

2  situation where he's been convicted.  The presumption of

3  innocence is gone.

4      Specifically, the controlling statute here is 18 U.S.C.

5  3143(a)(2), which says, "The judicial officer shall order that

6  a person who has been found guilty of an offense in a case

7  described -- and then it gives a citation which includes

8  serious drug offenses -- and is awaiting imposition or

9  execution of sentence be detained."

10      So he's been convicted of that category of serious drug

11  crimes that the Congress has said you should be locked up

12  pending sentencing, and that's specifically anything that

13  carries a maximum term of imprisonment of ten years or more.

14  So that includes everything in Schedule II and Schedule III.

15      Now, there are three statutory exceptions.  It says "shall

16  be detained," but there are three exceptions and I want to --

17          **THE COURT:**  Go on.  I'm just getting it up.  Go on.

18      **MR. PRATT:**  There are three exceptions.  Two of them

19  are right there in 3143.  One exception would be if there is a

20  substantial likelihood that the Court, that is, Your Honor, is

21  going to grant an acquittal or a new trial.

22      I don't think we're there.  I don't think that's realistic

23  at this point.  There may be something that happens, but I

24  don't think that's where we are.

25      The second exception would be the attorney for the

*17-20401-1; U.S.A. v. David Jankowski*

1  Government recommends no sentence of imprisonment, and that's

2  not really in play either, Your Honor.

3      So there's really only one exception to this requirement

4  that he be detained, and that's actually found -- you have to

5  go to a slightly different statute, 3145(c).  3145(c) says --

6  it's titled "Appeal from Release," but the Sixth Circuit has

7  said this applies to detention pending sentence.

8      It says, "Release may be ordered under appropriate

9  conditions by the judicial officer if it 'clearly shows that

10 there are exceptional reasons such person's detention would not

11 be appropriate.'"

12     So essentially he has to be detained under the

13 Congressional law unless there are exceptional reasons.  Well,

14 what's exceptional?

15     Well, I have done some research on that, Your Honor, and,

16 not surprisingly, there's not a whole lot of case law because

17 most of these cases get resolved not in the Court of Appeals

18 regarding detention pending sentence.

19     But we start with the legislative history, and there's a

20 letter from the Department of Justice that said that serious

21 legal issues would be an exceptional circumstance.  They point

22 out, well, if someone has been convicted of a mercy killing,

23 and the question is:  Does the law really apply?

24     And so when I read that letter I thought, for example, I

25 know the Court had the case where individuals were involved

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 16*

1   with allegations under the genital mutilation statute, and if

2   the Court hadn't made the ruling that it did; if, for example,

3   there had been a trial in front of a different judge and they

4   had been convicted, you would have said, well, there is a

5   serious question of constitutionality here so that would kind

6   of be exceptional.  Even though that's not one of the

7   enumerated ones, that would be the type of legal issue that

8   would be exceptional.

9        It's not limited -- you know, the case law is limited, but

10  I found a case from the Eighth Circuit, *U.S. v. Mahoney*,

11  627 F.3d 705, and the quotation -- this is from 2010 so the

12  statute has been around a while now.  It says, "It is well

13  settled that compliance with the terms of pretrial release is

14  commendable but does not justify release under 3145(c)."

15       So I mean this really kind of repeats the point that, just

16  because he has no bond condition violations and just because we

17  think he's going to show up, that's not exceptional.  That's

18  actually very normal.

19       And I found another case from the Second Circuit that

20  said, not surprisingly, being a first-time offender was not an

21  exceptional reason.  Never been in trouble with the law before

22  is just not exceptional because we have a lot of those people

23  that get convicted in federal court.

24       I tried to find cases involving doctors, and I found a

25  district court case that was unpublished from Judge Thapar.

*17-20401-1; U.S.A. v. David Jankowski*

1      **THE COURT:**   Judge who?

2      **MR. PRATT:**   Judge Thapar, who is now on our Court of

3  Appeals, I believe.

4      **THE COURT:**   Could be.  I don't know.

5      **MR. PRATT:**   Anyway, *U.S. v. Roos*, 213 West Law

6  3005631, 2013, and basically there you have got a situation

7  where a doctor was convicted of controlled substance offenses,

8  and the district court judge said, well, the doctor's partner

9  is seven months pregnant and needs physical and financial help,

10  but family hardship is unfortunate, but that's really not

11  exceptionable.  That's what happens when people go to prison is

12  there's family hardship.

13      And so, given the requirement that there be exceptional

14  reasons, and remember these have to be clearly shown, the

15  statute clearly contemplates that the burden is going to at

16  some point here shift to the defense to do something more than

17  say he hasn't violated and we're sure he's going to show up.

18      This is not a surprise to defense counsel.  I sent

19  Ms. Prasad and Mr. Morganroth, who was representing

20  Dr. Jankowski at the time, an email on January 2nd of this

21  year, which said, and I'm not going to read the whole thing,

22  but just a courtesy email where I told them, and I referenced

23  this section of the statute, and said you do need to understand

24  that if Dr. Jankowski is convicted at trial the Government

25  will, in all likelihood, be making this motion because it

1  requires his detention.  And I said I'm telling you this

2  because we know that people typically get time to prepare, to

3  put their affairs in order and not be surprised, and I said

4  this should give him time to understand that this is the motion

5  the government is going to make.

6          **THE COURT:**  That was in January of this year?

7          **MR. PRATT:**  January 2nd, Your Honor, so it's been

8  more than six months that defense counsel and the defendant

9  have known that this was going to be the Government's position.

10     And, Your Honor, I guess the situation is this is what the

11  law requires, and I guess the question is what happens when the

12  law is not followed to the letter, and I'm going to come back

13  to that, but we actually have some experience in this court

14  with what happens when -- sometimes when the letter of the law

15  is not followed.

16     And on April 17th of 2014 there was a Dr. Basil Quandil,

17  Q-u-a-n-d-i-l.  It was a bench trial in front of Judge Tarnow,

18  and he was convicted of these controlled substance offenses,

19  and it was Judge Tarnow so there was no -- he was a great

20  judge, but there was no detention after verdict, and he

21  actually stayed around for a few months, but -- from April

22  until August 14th.  He failed to appear for Pretrial Services.

23  He failed to appear for sentencing October 8th, 2014.  It turns

24  out -- they investigated -- he was on a flight to Mexico and

25  then Spain on August 12, 2014, and he hasn't been seen or heard

1    from since.

2        There was then Dr. Solomon, a case in front of Judge

3    Steeh.  There was a jury verdict of guilty of these same

4    offenses on September 24, 2015.  The Government made a motion

5    to revoke just like I'm doing now, and Judge Steeh, probably

6    not unreasonably, said, you know, maybe I'm not as familiar

7    with this as I should be and why don't you folks brief it, and

8    he set a hearing for two weeks out.  And of course the

9    Defendant didn't show up on October 5th, 2015, and he hasn't

10   been seen since.

11       And so I guess the situation is that the statute says

12   "shall be detained unless," detained unless, and so to the

13   extent the Court wants considerable briefing or wants to give

14   the defendant the opportunity to establish exceptional

15   circumstances, it seems to me the law indicates that until that

16   happens he ought to be detained.  And so -- because it says

17   unless it is shown exceptional circumstances.

18       So I think the mistake there was not necessarily that

19   maybe we can't talk to pretrial and maybe we can't see what's

20   going on here, but the fact is until you get to exceptional

21   circumstances under the statute you are in detention.  It isn't

22   the Government's burden to show that there aren't exceptional

23   circumstances.  It's the defendant's burden to show that there

24   are.

25       And so I guess -- I guess, Your Honor, I know that, you

1  know, this is the one courtroom that I know that we're always

2  going to have the most courtesy to everyone, to the government

3  and to the defendant, and I know the idea is, as a matter of

4  courtesy, well, he's got family ties, he's been on bond a long

5  time, he's probably not going to be there -- to not show up.

6      But I guess, Your Honor, I really have two responses to

7  that, to the Court's courtesy to the defendant.  One is that,

8  one is that he didn't show a lot of courtesy when -- on that

9  witness stand a couple of days ago.  He gave what was clearly

10  false testimony.  I had -- probably the one that highlights --

11  that really bothers me the most was when he insisted

12  Alyssa Hobson, the woman who had to testify by video because

13  she was pregnant, she testified about Ali Bazzi and him going

14  in his office together.  She said 80 percent of the time he

15  would go in there and go in his office, and the defendant sat

16  on that witness stand in your court and yelled, you know,

17  yelled "No, she's lying."

18      It's one thing to talk about people that the Court

19  instructs the jury they should look with care and caution at.

20  It's another thing when you had a woman who is very calmly

21  sitting there where none of the cross-examination suggested

22  there was any reason she would lie about that.  So he hasn't

23  shown the Court the kind of courtesy that he really kind of

24  wants here, to have the Court not follow what is the clear

25  statute.

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 21*

1   And so we're really asking the Court, and we think it's
2   important to avoid a potential miscarriage of justice, to say
3   that it really doesn't matter, that he might well be not likely
4   to flee.  The statute says for people who have these various
5   drug offenses, unless they can show those exceptional reasons,
6   and I don't see any and they haven't established them, he needs
7   to be detained until sentencing.

8        **THE COURT:**  Thank you.

9   Counsel?

10       **MS. PRASAD:**  Your Honor, I disagree that this is not
11  an exceptional case.  This is a case in which an individual has
12  been on pretrial since 2017, pretrial with no issues
13  whatsoever, not even a hint of flight, not even a danger to the
14  community.

15       And I also disagree that the defendant has been
16  disrespectful to the Court.  He has not.  From the date he was
17  indicted, all he did was endeavor to put his case on, which he
18  did.  He worked through the parameters of the court system and
19  the confines of the United States Attorney's Office to find
20  attorney after attorney who would give him his day in court,
21  which he has had.

22       Now that the verdict has come in, it's very imperative
23  that he and his family move to the next stage, which is
24  sentencing.  Your Honor knows from the testimony that the loss
25  amount at issue is going to be very complex.  This is nothing

*17-20401-1; U.S.A. v. David Jankowski*

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 22*

1  that can be settled or managed while in pretrial detention.

2  This is an issue that has to be dealt with quickly and swiftly

3  so that the defendant can come to sentencing with a viable loss

4  amount and accept Your Honor's sentence.  That's number one.

5       Number two, Judge, he's not a danger to the community.  I

6  don't believe anybody in the courtroom thinks he's a danger to

7  the community.  As Your Honor may or may not know, he has lost

8  his license, and this is his first offense.  If he were going

9  to flee, he would have done that in 2017, 2018, 2019, 2020 or

10  2021.

11       Your Honor has seen his family here.  You know he has

12  great ties to the community.  You know that we have to move

13  into the next step of sentencing -- I'm sorry -- of the case,

14  which is the loss amount.  It's not going to be an easy task

15  for me or for the defendant, but we are going to move through

16  the process to accept what Your Honor hands down.  That's where

17  we are and that's what we're going to do, and for these reasons

18  I am asking you to allow him to stay on bond so that we can

19  move this case forward.

20       **THE COURT:**  Okay.  It's a difficult decision, but I

21  guess that's what I get paid for.

22       The statute is very clear, and it talks about "shall."  It

23  says that "I shall" do something unless three things are there.

24  The first two, I agree with the Government, aren't there.

25       The third, it talks about a reason, and I have heard no

*17-20401-1; U.S.A. v. David Jankowski*

1   reason, but I am also aware of, you know, that which would

2   occur if this were not the charge, and that is danger to the

3   community or flight, and I don't think he's a danger to the

4   community, and I have seen his family here.  I don't think he's

5   a danger of flight, though I have said that before, and I

6   remember the case*, United States v. Genoa*, similar conviction,

7   different facts, and he was in flight.  And for four years

8   every time the Marshal walked into my courtroom I would say,

9   "Have you picked up Genoa yet?"  But I think that's an

10  extraordinary situation.

11       I think what I would do in this case, and I agree with

12  counsel, that he should -- you know, as I say, when you see

13  somebody's family, I just don't think he's a flight risk, and I

14  don't think he's a danger.

15       However, I think there is something to be said in relation

16  to now that he has been convicted that the message has to be

17  sent that he has been convicted.  So I'm going to change the

18  terms and conditions of his pretrial release to home

19  confinement, and so he will be under strict home confinement by

20  the pretrial release.  The confinement will be for everything

21  except for visiting with his attorney and if he needs -- or

22  participates in religious services he may go wherever he

23  participates in religious service.

24       But other than those two things, and of course the doctor,

25  he will be in home confinement under the Pretrial Services.

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 24*

1  There's never been a violation of his pretrial before. I

2  anticipate that there will be none here, that Pretrial Services

3  will go over all of the terms and conditions with him. I think

4  they have it written out even. And I will expect that this

5  will be a situation where there will be no violations

6  whatsoever. If there is a violation, then I will have to deal

7  with it in a different way.

8       For those reasons we will modify the pretrial release.

9       Okay. Anything else we should be talking about?

10      **MR. PRATT:** Judge, will we be able to enforce that

11  home confinement with a GPS tether?

12      **THE COURT:** Yes. In fact, the GPS tether is probably

13  better for everybody, including him. He won't have people

14  stopping over his house in the middle of the night and stuff,

15  and there won't be any dispute as to where he is and what he

16  is ... So, yeah, I think it's easier for everybody, too, and

17  he can afford to pay the nominal amount that it is.

18      **MR. PRATT:** Okay. Thank you, Your Honor.

19      **THE COURT:** Anything else by either side?

20      **MS. PRASAD:** Only should I take him upstairs to get

21  that implemented?

22      **THE COURT:** Johnetta, how does it work?

23      **THE CLERK:** He probably will have to report to

24  Pretrial. We will need an order first, Judge.

25      **THE COURT:** Pardon? I'm sorry.

*17-20401-1; U.S.A. v. David Jankowski*

1    **THE CLERK:**  We will need an order.

2    **THE COURT:**  Oh, we'll do the order.

3    **THE CLERK:**  Okay.

4    **THE COURT:**  You can call Pretrial Services.  Maybe

5    they will come down here.  Ask them how they want to do it, but

6    tell them I will sign the order momentarily.

7        And they may have the standard language so we'll just put

8    their standard language in our thing for a home detention with

9    GPS.

10   **THE CLERK:**  Okay.

11   **THE COURT:**  And then a sentencing date, do you have

12   one, Johnetta?

13   **THE CLERK:**  Yes.  The proposed sentencing date is

14   November the 15th at 1:30 p.m.

15   **THE COURT:**  Okay.  Johnetta will call Pretrial

16   Services.  Maybe they will want you -- they will come down here

17   or they will do whatever they think is the most appropriate way

18   of doing it.

19   **THE CLERK:**  Angeli, do you know who his Pretrial

20   Services officer is?

21   **MS. PRASAD:**  You know, it changed a few times.  If

22   you give me a minute, I can check my email, but it did change a

23   couple times.

24   **THE CLERK:**  Just let me know.

25   **THE COURT:**  But it will be the person that's on duty

*Motion for Bond Revocation*
*Monday/July 11, 2022/Vol. 16*

*Vol. 16/Page 26*

1   that will put it on him today anyhow, not his particular agent,

2   I don't think, but anyhow you guys work that out.

3   　　　　**THE CLERK:**  I don't know.  They may be in duty court,

4   Judge.

5   　　　　**THE COURT:**  Okay.  Whatever.  You will work it out.

6   　　Okay.  We'll stand in recess.

7   　　(Proceedings concluded at 2:12 p.m.)

8   　　　　　　　　　　　　-  -  -

9   　　　　　　**C E R T I F I C A T I O N**

10   　　I certify that the foregoing is a correct transcription of

11   the record of proceedings in the above-entitled matter.

12

13   s/ Sheri K. Ward_____　　　　　　7/31/2022
     Sheri K. Ward                          Date
14   Official Court Reporter

15   　　　　　　　　　　　-  -  -

16

17

18

19

20

21

22

23

24

25

*17-20401-1; U.S.A. v. David Jankowski*