UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

     Plaintiff,

v.

DAVID JANKOWSKI,

     Defendant.

Case No. 17-20401
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DAVID JANKOWSKI'S MOTION TO
VACATE UNDER 28 U.S.C. § 2255 [323] AND MOTION FOR BOND [354]**

---

David Jankowski was a licensed physician who operated Summit Medical
Group, Summit Physicians Group, and Summit Visiting Physicians. During a weeks-
long jury trial in the summer of 2022, evidence was presented that, for many years,
Jankowski primarily operated his medical enterprise as a prescription mill. This
included witness testimony and supporting exhibits showing that large quantities of
controlled substances were prescribed to and billed for patients without a legitimate
medical need and outside the scope of professional practice.

Jankowski was convicted of unlawful distribution of controlled substances,
health care fraud, and conspiracy to commit the two offenses. (ECF No. 178.) His
sentence consisted of 240 months' imprisonment, a $5.2 million dollar restitution
obligation to Medicare, and a $35 million dollar forfeiture judgment representing both
direct proceeds of Jankowski's crimes and indirect proceeds to maintain the
fraudulent appearances. (ECF No. 253.) His convictions and sentence were affirmed

on direct appeal. *United States v. Jankowski*, No. 23-1404, 2024 U.S. App. LEXIS

26960 (6th Cir. Oct. 23, 2024).

So Jankowski now seeks post-conviction relief under 28 U.S.C. § 2255. (ECF

No. 323.) In Jankowski's telling, most of the major trial participants violated his

constitutional rights. He complains of prosecutorial misconduct, judicial bias, and

ineffective assistance of counsel. His claims, however, are procedurally defaulted,

already rejected by the Sixth Circuit, or lack merit. Thus, the motion is DENIED.

## I.

In ruling on Jankowski's direct appeal, the Sixth Circuit summarized the key

facts. As they set the backdrop for the present motion, this Court will adopt and

repeat them here:

> David Jankowski was a licensed physician who specialized in pain
> management. He possessed a DEA license, which allowed him to
> prescribe and dispense controlled substances. Jankowski offered pain
> management services through two corporate entities. One operated a
> clinic equipped with an in-house pharmacy stocked with narcotics and
> other controlled substances. Another functioned as a home-based
> healthcare practice that sent providers to patients' homes.
>
> Jankowski was eligible to bill the federal Medicare program for these
> services. Together, his companies received $35.3 million in gross
> proceeds between 2011 and 2018. And over the course of about six years,
> Jankowski and his associates filled more than 3.4 million doses of
> Schedule II, III, and IV controlled substances. As the evidence at trial
> revealed, however, Jankowski's operations were rife with impropriety.
>
> For example, Jankowski provided patients with unnecessary pain
> medication. Patients would later resell the pills, with one of Jankowski's
> patients becoming "the biggest pill dealer" in the community. These
> practices were so familiar that current patients would introduce new
> patients to Jankowski's clinics, with instructions to exaggerate their
> pain levels and pay cash in exchange for prescriptions from Jankowski.
> Besides seeing patients himself, Jankowski prepared pre-signed

prescriptions so that unlicensed employees could prescribe controlled substances (albeit improperly) in his absence.

Jankowski's unwarranted practices did not end there. He billed Medicare for services he did not provide. By way of background, Medicare reimburses mid-level practitioners—physician assistants and nurse practitioners—at a higher rate when they render care under the direct supervision of a physician. With that in mind, Jankowski informed his billing company that mid-levels at his practice were always under his direct supervision, thereby justifying the higher rate, even when that was not true.

Following an FBI investigation, a grand jury indicted Jankowski on 46 counts, with one of his employees indicted as a co-conspirator on two counts. The indictment alleged one count of conspiracy to distribute and to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846, one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, 30 counts of the unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), and 14 counts of health care fraud in violation of 18 U.S.C. § 1347. It also contained forfeiture allegations. [citations omitted.]

Ultimately, 32 counts proceeded to trial. As Special Agent Brian Koczenasz testified at trial, the FBI conducted its investigation into Jankowski partly through Henderson Butler, a confidential informant who posed as a patient at Jankowski's clinic while equipped with recording devices. The government played for the jury clips from five of those visits. Before and after the recordings were played, Koczenasz narrated what they depicted. The clips revealed conversations Butler had with employees at Jankowski's clinic, including medical assistant Haas, physician assistant Ruan, and nurse practitioner Spradlin. The evidence reflected many irregularities, including the fact that Jankowski did not always consult with Butler, the patient, even though the visits were billed under Jankowski's name.

The jury convicted Jankowski of 30 out of 32 counts. Following the denial of Jankowski's motion for judgment of acquittal and a subsequent forfeiture hearing, the district court imposed forfeiture in the amount of $35 million. It then sentenced Jankowski to 240 months' imprisonment, followed by three years of supervised release.

*Jankowski*, 2024 U.S. App. LEXIS 26960, at *1–4.

Jankowski now seeks to vacate his convictions and sentence under 28 U.S.C. § 2255. (ECF No. 323.) He asserts four primary grounds for relief: prosecutorial misconduct, judicial misconduct, confrontation clause violations, and ineffective assistance of counsel. (*Id.* at PageID.7035–7036.) None warrant a correction of Jankowski's sentence. Nor is a hearing necessary because the motion, record of prior proceedings, and governing law "conclusively show that [Jankowski] is entitled to no relief." *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018); 28 U.S.C. § 2255(b); Rules Governing § 2255 Cases, Rule 4(b).

## II.

To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the . . . jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). But "Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003).

## III.

Jankowski first contends that prosecutorial misconduct and judicial bias and misconduct infected his trial. (ECF No. 323, PageID.7038–7046.) But neither of these claims were raised on direct appeal. Thus, the government contends, as an initial matter, that they are procedurally defaulted. (ECF No. 332, PageID.7102, 7110.) The Court agrees.

4

Generally, a defendant must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (quoting *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001)); *see also Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (explaining that "[u]nder the Supreme Court's procedural-default rule," a defendant's failure to raise a claim "during the 'main event' (his criminal litigation) means that he presumptively cannot raise it in an after-the-fact § 2255 motion"). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Sullivan*, 587 F. App'x at 942 (6th Cir. 2001) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

## A.

Jankowski's petition made no mention of his procedural default. So he made no attempt to establish cause, prejudice, or actual innocence. After the government raised the issue of procedural default in its response (ECF No. 332, PageID.7094–70926), Jankowski attempted to re-characterize his prosecutorial and judicial misconduct claims as ineffective assistance of counsel claims, which are not subject to the procedural default rule. (ECF No. 333, PageID.7126–7127.) But this effort fails. Jankowski's motion clearly delineated separate and distinct claims for prosecutorial misconduct, judicial misconduct, and ineffective assistance of counsel. (*See* ECF No. 323, PageID.7035–7036.) And, in any event, "arguments made for the first time in a

reply brief are forfeited." *Grand v. City of Univ. Heights,* 159 F.4th 507, 516 (6th Cir. 2025); *see also Tri-State Wholesale Bldg. Supplies, Inc. v. NLRB*, 657 F. App'x 421, 425 (6th Cir. 2016) (noting that the Sixth Circuit has "consistently held that arguments not raised in a party's opening brief . . . are waived, or at least forfeited"); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (explaining that arguments first presented in a reply are "not properly before the district court" and "the district court d[oes] not err in declining to address" them). Nor is there a basis for an actual innocence claim as the Sixth Circuit previously found sufficient evidence to support Jankowski's health care fraud conspiracy conviction. *Jankowski*, 2024 U.S. App. LEXIS 26960, at *7–8. And Jankowski has provided no new evidence or argument that would upset that finding.

Thus, Jankowski's procedurally defaulted claims of prosecutorial and judicial misconduct do not entitle him to relief under § 2255.

## B.

Even if Jankowski had not procedurally defaulted these claims, they lack merit.

Reviewing allegations of prosecutorial misconduct is a two-step inquiry: determining whether the statements were improper; and, if so, determining whether they were flagrant enough to warrant relief. *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002). The flagrancy prong is determined on consideration of four factors: (1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper

statements; (3) whether the statements were deliberately or accidently before the jury; and (4) the total strength of the evidence against the defendant. *Id.*; *see also Bowling v. Parker*, 344 F.3d 487, 512–13 (6th Cir. 2003) (citing *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)). This test is meant to reflect that prosecutorial misconduct must be "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994) (quoting *United States v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993)).

That is not what the record reflects here. Jankowski primarily complains about statements made during the prosecutor's closing argument. But prosecutors "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). Indeed, courts "afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). The government's response accurately explains how the witness testimony and admitted exhibits supported the prosecution's statements. (*See* ECF No. 332, PageID.7102–7109.) Moreover, the jury was instructed at the beginning and end of the trial that the lawyers' statements are not evidence. (ECF No. 156, PageID.1001; ECF No. 186, PageID.3297.) So there is no basis for finding that the verdict would have been different had the government's closing argument been different.

Similarly, Jankowski has made no showing that the government's failure to call a witness they previewed in the opening statement affected the fairness of the trial. Given the strength of the evidence against Jankowski, presented over a lengthy

7

trial, it turned out that calling this additional witness regarding Medicare billing irregularities was unnecessary and cumulative. (ECF No. 332, PageID.7104.)

In sum, there is no prejudice to excuse Jankowski's failure to raise a prosecutorial misconduct claim on direct appeal, nor does the claim merit relief on its own.

## C.

The same is true for Jankowski's complaints about the district judge's alleged impartiality and demeanor during trial. This is not an issue unless the judge's conduct "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). This is true even when the judicial remarks are "hostile." *Id.*; *see also United States v. Adams*, 722 F.3d 788, 838 (6th Cir. 2013) (noting that judicial statements "amount[ing] to criticism and disapproval of defendants" do not satisfy the "'extreme' bias or prejudice standard under *Liteky*"). Moreover, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 556. Nothing about Judge Friedman's tone, manner, or how he handled witnesses, including Jankowski, met this standard of impropriety.

For instance, the focus of Janowski's upset centers around Judge Friedman's decision to preclude redirect of Jankowski's expert witness. But, as will be discussed below, this was a function of scheduling conflicts, trial efficiency, and "the interest of justice," (ECF No. 170, PageID.2033), not judicial bias. Judge Friedman also

8

instructed the jury that they should not interpret his rulings on any objection as any indication as to how he thought the case should be decided. (ECF No. 186, PageID.3277.) He also instructed them, twice, that "[n]othing that I have said or done during this trial was meant to influence your decision in any way. You decide for yourself if the Government has proved the defendant guilty beyond a reasonable doubt." (*Id.* at PageID.3271, 3363.) And given the strength of the evidence against Jankowski, there is no reason to believe anything the trial judge said or did to manage the proceedings affected the verdict.

Thus, Jankowski's claims of judicial misconduct also do not warrant relief under § 2255.

## IV.

Next is Jankowski's confrontation clause challenge. (ECF No. 323, PageID.7047.) This suffers from the opposite problem. This issue was raised and rejected on direct appeal.

The law enforcement investigation into Jankowski's medical practice included the use of a confidential informant, Henderson Butler, posing as a patient seeking controlled substances. (ECF No. 172, PageID.2176.) Butler recorded his visits to Jankowski's clinic. (*Id.*) He was seen by Jankowski on only one of his eleven visits, despite all of them being billed in Jankowski's name, and he was prescribed approximately 1,200 pills over the fifteen-month period of the visits. (ECF No. 172, PageID.2217—2218.) Butler, however, had been a very poor witness in another health care fraud trial in this District where the doctor was acquitted. So, posits

Jankowski, instead of calling Butler in Jankowski's trial, the government used FBI agent Brian Koczenasz to admit and testify about some of the videos that Butler made. (ECF No. 323, PageID.7047; ECF No. 333, PageID.7127.) Jankowski says this was a confrontation clause violation. (ECF No. 323, PageID.7047–7048.)

But this same argument was already rejected by the Sixth Circuit. That Court found, on direct appeal, that several pieces of testimony Jankowski challenged from the undercover recordings "were not offered for their truth and, therefore, [did] not implicate the Confrontation Clause." *Jankowski*, 2024 U.S. App. LEXIS 26960, at *14. The Court further found that statements made by Jankowski's employees to Butler, even if offered for their truth, were not testimonial because the employees were not aware that Butler was a government agent. *Id.* at *15 ("As Jankowski's employees were not aware that Butler was a government informant, they could not have anticipated that their statements would be used against Jankowski in a criminal trial . . . Those statements thus were not testimonial, meaning their admission did not violate the Confrontation Clause.") With regard to Koczenasz's testimony describing statements made by Butler or Jankowski's employees on the recordings played to the jury, the appeals court found this testimony "did not violate the Confrontation Clause, because, as discussed above, the statements—or lack thereof—made by Butler and the employees did not themselves violate the Clause." *Id.*

This Court is bound by the Sixth Circuit's ruling. Indeed, a "§ 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional

10

circumstances," like an intervening change in law. *Dupont v. United States*, 76 F.3d 108, 109 (6th Cir. 1996). No such circumstances exist here. Thus, there is no confrontation clause issue entitling Jankowski to relief under § 2255.

## V.

That leaves Jankowski's claims for ineffective assistance of counsel, which can be an appropriate basis for relief under § 2255, even if never before raised. *See United States v. Caver*, 470 F.3d 220, 250 (6th Cir. 2006). In other words, an ineffective-assistance-of-counsel-claim is not subject to the procedural default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To prevail on an ineffective-assistance claim, a petitioner must establish (1) that counsel performed deficiently; and (2) that the deficient performance prejudiced the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is "deficient" when she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Jankowski contends his counsel was ineffective in a number of ways. The Court will endeavor to address them all.

## A.

First, Jankowski has re-styled a claim that the evidence was insufficient to convict him of Medicare fraud as an ineffective assistance of counsel claim—perhaps because on direct appeal, the Sixth Circuit noted that Jankowski never argued below "that the government failed to admit evidence that he submitted fraudulent claims to Medicare." *Jankowski*, 2024 U.S. App. LEXIS 26960, at *5. Nevertheless, Jankowski now claims his trial counsel's failure to bring forth this "actus reus argument" was "objectively unreasonable." (ECF No. 323, PageID.7051.)

Jankowski relies on *United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008), in which the Court found that a health care fraud conviction under 18 U.S.C. § 1347 requires proof that the defendant (1) knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program, and (2) acted with intent to defraud. The essence of Jankowski's argument, as it was on direct appeal, is that "the government, by relying on summaries of selected claims, instead of the actual claims themselves, failed to show that he in fact submitted fraudulent claims to Medicare for reimbursement, a necessary element of his substantive health care fraud conviction." *Jankowski*, 2024 U.S. App. LEXIS 26960, at *5. Stated differently, Jankowski faults his counsel for not arguing that the government failed to admit into evidence the underlying Medicare claims that it used to compile its summary charts and thus failed to prove the first element of health care fraud under 18 U.S.C. § 1347—that Jankowski himself "willfully executed" a scheme to defraud the

government. (*See* ECF No. 323, PageID.7050–7051.) But Jankowski's counsel actually made sure that such evidence was admitted. As the Sixth Circuit found:

> Jankowski also comes up short in challenging as improperly admitted three other exhibits identified by a witness as summaries of Jankowski's Medicare billing. The witness also testified to their accuracy. Following this testimony, the government moved to admit the exhibits. Jankowski agreed to their admission provided that the underlying data was admitted as well, which it was.

*Jankowski*, 2024 U.S. App. LEXIS 26960, at *25–26. So this is a not a basis to find deficient performance or prejudice.

**B.**

Next Jankowski contends that his trial counsel was ineffective in failing to object to the jury instructions on the drug distribution charges under 21 U.S.C. §§ 841(a) and 846. (ECF No. 323, PageID.7051.)

Section 841(a)(1) states, "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1). In *Ruan v. United States*, the Supreme Court held that "§ 841's 'knowingly or intentionally' mens rea applies to the 'except as authorized' clause." 597 U.S. 457, 468 (2022). Thus, to obtain a conviction under the statute, "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Id.* It is not enough that the defendant knowingly or intentionally dispensed the controlled substance. *Id.* at 459 ("[I]t is the fact that the doctor issued an unauthorized prescription that renders his or her conduct wrongful, not the fact of the dispensation itself.").

13

Here, the jury was instructed, consistent with *Ruan*, that it had to find Jankowski "knowingly or intentionally issued the prescription in an unauthorized manner, that is, outside the usual course of professional practice and for no legitimate medical purpose." (ECF No. 186, PageID.3284–3285, 3288.) And, further, that Jankowski could not be convicted "if he merely made an honest effort to treat the patient in compliance with an accepted standard of medical practice." (*Id.* at PageID.3288.) Jankowski's upset is that "the district court failed to define 'a legitimate medical purpose by an individual practitioner acting in accordance with generally recognized and accepted professional standards in the <u>field in which the individual practices.</u>'" (ECF No. 323, PageID.7052) (emphasis in original).

But he points to no case law suggesting this was necessary to adequately convey the law to the jury. As the government points out, "[i]f [Jankowski] actually attempted to comply with *any* accepted standard of care, including the standard of care within his specialty, he would have been acquitted under the instruction that was given." (ECF No. 332, PageID.7117–7118.) And both sides presented expert testimony on the accepted standard of medical practice for the jury to utilize. (*Id.*) Jankowski does not cite any record evidence indicating that the verdict resulted from any juror confusion on the applicable medical standards.

The law is well settled that "[a] trial court has broad discretion in crafting jury instructions and does not abuse its discretion unless the jury charge 'fails accurately to reflect the law.'" *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007) (citation omitted). The instructions as given were not deficient in this regard and so

14

Jankowski's counsel was not deficient in approving them. This Court also fails to see how the result of the trial would have been different with Jankowski's proposed addition to the instructions.

## C.

Under the guise of ineffective assistance of counsel, Jankowski reiterates his concerns about the government's failure to call confidential informant Henderson Butler as a trial witness and to use agent Koczenasz in his place. Jankowski contends that his counsel's failure to object to the confrontation clause issues from Butler's failure to testify was objectively unreasonable and prejudicial. (ECF No. 323, PageID.7053–7054.) But as mentioned, the Sixth Circuit found no confrontation clause violation raised by Koczenasz's testimony. *Jankowski*, 2024 U.S. App. LEXIS 26960, at *15. And failing to raise meritless objections is not deficient performance. *See, e.g.*, *Cleveland v. United States*, No. 21-3758, 2022 U.S. App. LEXIS 11113, at *13 (6th Cir. Apr. 22, 2022) ("Counsel cannot have been ineffective for failing to raise a baseless objection"); *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016) (concluding that "the failure to make futile objections does not constitute ineffective assistance"); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to pursue a meritless claim or raise a meritless objection).

The same holds true for counsel's failure to object to the admission of Butler's recordings under Federal Rule of Evidence 901. As the Sixth Circuit already ruled:

> Before playing the recordings, Koczenasz explained to the jury the functionality of the recording instruments Butler carried into the clinic.

15

He testified that Butler had "both audio and visual" devices, and that the FBI was monitoring the audio feed live. He added that, to his knowledge, Butler did not turn off the devices, nor had agents detected any tampering with them. And Koczenasz narrated the contents of each recording before it was played before the jury. Testimony of this sort typically is adequate to establish the recordings' "accuracy and trustworthiness." *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004). Therefore, any error in sending the recordings to the jury without moving first to admit them was harmless. *Vonner*, 516 F.3d at 386.

*Jankowski*, 2024 U.S. App. LEXIS 26960, at *24.

In short, because there was no error in the way the Butler undercover recordings were admitted and utilized at trial, defense counsel's failure to object to them does not constitute a Sixth Amendment violation.

### D.

Nearly four years into the prosecution, Jankowski's newly retained counsel filed numerous pre-trial motions. (*See* ECF Nos. 100, 101, 102, 104, 112.) But Jankowski believes her representation was below par because she failed to file a motion alleging a *Brady* violation. (ECF No. 323, PageID.7055.)

More than "[f]ifty years ago, the Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that the government must provide defendants with material, exculpatory evidence in its possession." *United States v. Tavera*, 719 F.3d 705, 708 (6th Cir. 2013.) None of the evidence Jankowski identifies in his motion rises to that level.

First, he acknowledges that "[b]efore trial, [he] was given written notice on witness lists of Henderson Butler, a confidential informant for the government and

an important witness for their criminal case." (ECF No. 323, PageID.7055.)[1] That leaves Jankowski's complaint regarding the data from the Michigan Automated Prescription System (MAPS). "MAPS is used to track schedules 2-5 controlled substance prescriptions dispensed in or into Michigan. It is a tool used by prescribers and dispensers to assess patient risk and is also used to prevent drug abuse and diversion at the prescriber, pharmacy and patient levels." *MI Automated Prescription System*, Licensing and Regulatory Affairs, https://perma.cc/5RTA-3XBR. For the relevant time period, this data attributed to Jankowski over 50,000 prescriptions from hundreds of pharmacies. (ECF No. 361, PageID.7437.) Jankowski believes these prescriptions would have revealed voluminous errors in the MAPS data—for example, thousands of prescriptions attributed to Jankowski incorrectly and that belonged to unrelated medical practices. (ECF No. 323, PageID.7056; ECF No. 333, PageID.7130.) But, argues Jankowski, the government failed to produce them.

Despite Jankowski's argument to the contrary, the government has no *Brady* obligation to disclose information that is not within its possession, custody, or control. *See, e.g.*, *Sutton v. Carpenter,* 617 F. App'x 434, 441 (6th Cir. 2015) (noting that the Sixth Circuit has "rejected *Brady* claims premised on evidence possessed by uninvolved government agencies"); *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("*Brady* and its progeny have recognized a duty on the part of the

---

[1] To the extent Jankowski is arguing that the government failed to disclose whether Butler was *paid* or not, that argument also fails. (*See* ECF No. 323, PageID.7054.) The case Jankowski apparently relies on for this proposition, *Banks v. Dretke*, involved the government failing to disclose altogether a testifying witness' status as a confidential informant. 540 U.S. 668, 703 (2004).

prosecutor to disclose material evidence that is favorable to the defendant over which the prosecution team has control. 'But *Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess.'") (citation omitted). And here, the government never acquired the complete set of prescriptions. (ECF No. 361, PageID.7437.) Instead, "[t]he government obtained an original or duplicate original prescription for only a few selected patients, including all patients referenced in the indictment." (*Id.*; *see also id.* at PageID.7437–7438 ("Original or duplicate original prescriptions for all 16 counts of unlawful distribution of controlled substances charged in the indictment were admitted, and the defendant was convicted on each unlawful distribution count.").) And "[a]ll original prescriptions in the possession of the government were made available in discovery." (*Id.* at PageID.7437.) Thus, there was no *Brady* violation necessitating a defense motion, and Janowski's counsel was not ineffective for failing to make one. Stated differently, "Counsel could not be ineffective for failing to raise a meritless argument." *Shakir v. United States*, Nos. 21-5180/5181, 2021 U.S. App. LEXIS 28562, at *11 (6th Cir. Sept. 20, 2021) (citing *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)); *see also Miller v. United States*, No. 25-3459, 2025 U.S. App. LEXIS 28668, at *6 (6th Cir. Oct. 30, 2025) ("An attorney does not render ineffective assistance by refusing to file meritless motions") (citing *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013)).

The cases Jankowski relies on do not alter the Court's conclusion. (ECF No. 366, PageID.7470–7471.) In both *United States v. Tavera*, 719 F.3d 705 (6th Cir.

2013), and *Keyles v. Whitley*, 514 U.S. 419 (1995), the court found *Brady* violations where the undisclosed exculpatory evidence was within the government's control. In *Tavera,* the government conducted a pre-trial interview of a co-defendant who made exculpatory statements about Tavera's lack of involvement in the conspiracy. 719 F.3d at 708. That Tavera could have also spoken with this witness did not relieve the government of its obligation to produce the information from its own interview. *Id.* at 712. And in *Keyles*, a case in which the prosecution failed to disclose numerous pieces of exculpatory evidence from law enforcement's investigation of a murder, the Supreme Court stated that "the individual prosecutor has a duty to learn of any favorable evidence known to the others *acting on the government's behalf in the case*, including the police." 514 U.S. at 437 (emphasis added).

But a "panel of [the Sixth Circuit] has held that 'prosecutors' sleuthing duties' are confined 'to material information possessed by members of the prosecution team.'" *Sanders v. Plappert*, No. 16-6152, 2024 U.S. App. LEXIS 16890, at *9 (6th Cir. July 10, 2024) (quoting *Sutton*, 617 F. App'x at 441)). The Sixth Circuit has further "held that the team does not include uninvolved government agencies." *Id.* (citing *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010)). Here, Jankowski has made no showing of such a requisite relationship between the prosecution team and the pharmacies (or others) having possession of the prescriptions underlying the MAPS data. As such, the prosecutors were under no obligation to "sleuth" for exculpatory evidence beyond that which was in its possession.

19

Nor has Jankowski even made a showing that the prescription data was exculpatory. The government believes to the contrary. (*See* ECF No. 332, PageID.7118 (Jankowski "speculates without any basis that the 'thousands of prescriptions were inaccurately attributed to him'" but "[t]his claim ignores the substantial evidence that Jankowski directed his employees to use prescriptions he pre-signed in his absence to keep his drug trafficking organization operating"); ECF No. 361, PageID.7439 (Because Jankowski's "physician assistants (PAs) and nurse practitioners (NPs) worked under his control and were expected to prescribe as he demanded," the "government argued Jankowski was criminally responsible for illegal prescriptions written by his employees").)

In sum, there was no deficient performance or prejudice resulting from defense counsel's failure to file a *Brady* motion to compel the government to produce the tens of thousands of prescriptions attributed to Jankowski.

### E.

Nor was Jankowski's counsel otherwise ineffective in her challenge to the government's use of MAPS data. (*See* ECF No. 323, PageID.7056.) In a case alleging unauthorized prescribing, it appears Jankowski's counsel made the strategic decision to avoid introducing the tens of thousands of controlled substances prescriptions with some connection to Jankowski. Instead, she chose to challenge the summary data relied on by the government. This was done through cross-examination of government witnesses and by Jankowski's own testimony. (*See, e.g.*, ECF No. 184, PageID.2957, 2959–2969 (Jankowski testimony regarding inaccuracies in the MAPS data).) As the

20

government explains, "Jankowski's trial counsel challenged the accuracy of the MAPS data upon which the Government relied in its summary exhibits and challenged the accuracy of the MAPS data in her closing argument repeatedly referring [to] the 'MAPS fiasco'" and errors in the MAPS data and "implored the jurors to demand actual prescriptions rather than rely upon data pulled from MAPS saying 'the MAPS reporting is wrong, and that skews all the numbers.'" (ECF No. 332, PageID.7119 (citing ECF No. 186, PageID.3341–3342).) It is simply inaccurate for Jankowski to contend that his trial (and appellate) counsel failed to adequately challenge the MAPS data. (ECF No. 366, PageID.7469.)[2] And her strategic decisions about how best to do that, even if different from what Jankowski wanted, "are virtually unchallengeable," *Strickland*, 466 U.S. at 690, especially where they do not fall outside the wide range of professionally competent assistance, *id.* at 689.

Nor has Jankowski shown how the results of the trial would have been different had his counsel done more with the thousands of prescriptions attributed to him for one reason or another. In his reply brief, Jankowski attaches a declaration from a Michigan pharmacist that Jankowski believes highlights "the immense magnitude of wrongly attributed prescriptions to [him] under MAPS." (ECF No. 333, PageID.7127.) Aside from the fact that this is another argument impermissibly raised for the first time in a reply brief, the affidavit fails to reveal any prejudice. The

---

[2] Jankowski fails to provide any support that his appellate counsel had a conflict of interest by representing pharmacies that Jankowski speculates may have made errors in reporting his prescriptions to MAPS. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

21

pharmacist avers that "MAPS merely provides summary information of a prescription and is filled with errors due to mistakes in data entry." (ECF No. 333, PageID.7137.) He believes, therefore, that "it is very plausible for MAPS data to credit a doctor or a practice group that is from an entirely different and unrelated practice." (*Id.*) Despite his 44 years of experience, however, he provides not even one actual example. He goes on to conclude that "50,000 prescriptions summarized by MAPS could contain thousands and thousands of wrongly attributed scripts to an entirely different practice having no relation to the doctor receiving credit on the MAPS system, especially prior to January of 2017 because MAPS, during this period, was summary data." (*Id.*) Again, not one actual example of an erroneous prescription is given, let alone thousands and thousands, including for any prescription that MAPS attributed to Jankowski.

And in advancing the argument that closer inspection of the MAPS records would reveal some prescriptions attributed to him were issued without his actual involvement, Jankowski appears to be missing the point: that was precisely the government's theory. (*See, e.g.,* ECF No. 361, PageID.7439.) That is, the evidence showed that Jankowski empowered his employees, who were unauthorized to issue prescriptions, to nevertheless issue scripts often pre-signed with his signature, but without any meaningful oversight by Jankowski himself.

Nor does the affidavit rebut the government's broader argument that "[t]he direct evidence of [Jankowski's] illegal prescribing practices was overwhelming." (ECF No. 332, PageID.7119.) Many of Jankowski's employees testified about their

concerns regarding Jankowski's prescribing practices and his failure to change them. (*Id.* at PageID.7120–7121.)

In short, Jankowski's speculation that the summary MAPS data relied on by the government during his trial was riddled with errors does not support an ineffective assistance of counsel claim on either the deficiency or prejudice prong.

**F.**

Jankowski also raises as a claim of ineffective assistance of counsel arising from his lawyer's brief illness during trial. (ECF No. 323, PageID.7058.) "In order to prevail on a claim of ineffective assistance based on counsel's illness, 'a defendant must point to specific errors or omissions in his courtroom behavior and conduct at trial that were a product of the attorney's illness.'" *Samet v. United States*, 559 F. App'x 47, 50 (2nd Cir. 2014) (quoting *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002)). Jankowski has not done so. (*See* ECF No. 323, PageID.7058 (failing to identify "specific errors or omissions" in his lawyer's conduct caused by her illness).)

Indeed, as the government explained, "On June 1, 2022, defense counsel appeared for court but was too ill with flu like symptoms to proceed. By June 3, defense counsel recovered and was prepared to proceed, but one of the jurors was absent, so no trial was held. Trial resumed on Monday, June 6, 2022," with defense counsel ready and able to perform. (ECF No. 332, PageID.7121–7122.) Thus, the Court has been given no reason to believe that counsel's temporary illness from a common, recoverable condition affected her ability to function when court was in session or to be adequately prepared when court resumed. The Court sees nothing in

23

*Strickland* that precludes counsel from obtaining a few-day recess to recover from an illness. This is not a constitutional violation that entitles Jankowski to relief under § 2255.

## G.

A one-day trial recess was taken after the direct and cross-examination of Jankowski's expert medical witness, Dr. Thomas Nabity, on Monday, June 30, 2022. Due to a scheduling conflict, Nabity did not appear for re-direct when court resumed on Wednesday. The judge gave him the entire day to appear, but he did not do so. (ECF No. 170, PageID.1820.) The defense then called a number of other witnesses that filled the day before the trial was adjourned until July 6. Given this passage of time and the testimony of the intervening witnesses, Judge Friedman did not permit any redirect of Nabity. (*Id.* at PageID.2031–2034.) In addition to claiming this was judicial bias, Jankowski also says his counsel was ineffective for lying about Dr. Nabity's availability. (ECF No. 333, PageID.7130.) This claim also fails.

First, it fails procedurally as it was raised only in Jankowski's reply brief.

Second, it fails on the merits. The Court need not wade into the morass of conflicting affidavits and ever-changing stories as to whether Dr. Nabity was unavailable on the day for his re-direct due to a personal conflict (a pool party for his kids) or a professional conflict. (*See, e.g.*, ECF No. 333, PageID.7135; ECF No. 338.) Even assuming defense counsel acted unreasonably in failing to secure Nabity's appearance, Jankowski has shown no prejudice. The entirety of his argument—"[t]o state that Jankowski was prejudiced because he was unable to recall his sole expert

24

witness for a complex trial is an understatement at the very least" (ECF No. 333, PageID.7130)—does not cut it. It does nothing to demonstrate how the result of the trial would have been different. Nabity testified for several hours and opined that Jankowski was running a "legitimate medical practice." (ECF No. 169, PageID.1683.) As Judge Friedman explained, "each side has had an opportunity to examine and to cross-examine, and so I think that the record is pretty much clear in terms of what the doctor had to say and has to say and therefore it does not put either side at a disadvantage at this time." (ECF No. 170, PageID.2033–2034; s*ee also* ECF No. 332, PageID.7112 ("The defendant also fails to proffer what evidence Dr. Nabity might possibly have provided on redirect. The defense presented extensive direct testimony from the witness.").)

Dr. Nabity made the decision to not appear for the completion of his testimony. Judge Friedman exercised his discretion to not have the jury hear any further testimony from Nabity many days and many witnesses after his direct and cross-examination. There is no basis to find that Jankowski's counsel was responsible for this outcome or that it affected the jury's verdict.

## H.

Lastly, Jankowski claims that the cumulative effect of trial counsel's errors deprived him of his due-process right to a fair trial. (ECF No. 323, PageID.7060–7061.) "[B]ecause there are simply no errors to cumulate," *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007), "the cumulative error doctrine does not warrant" relief. *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012).

25

# VI.

For all of these reasons, Jankowski's motion to vacate his convictions and sentence under § 2255 (ECF No. 323) is DENIED. As a result, his motion for bond pending resolution of this motion (ECF No. 354) is DENIED AS MOOT.

The Court further finds that reasonable jurists could not debate whether "the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). Jankowski has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Thus, a certificate of appealability is DENIED. The Court will, however, grant Jankowski leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: January 7, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE